## Boon *v*. Maberry.

Opinion delivered November 10, 1919.

CANCELLATION OF DEEDS—MISTAKE OF THE PARTIES—DESCRIPTION.—A deed was properly canceled which in its description embraced lands which the seller did not intend to sell, nor which the buyer intended to buy.

Appeal from Woodruff Chancery Court, Southern District; *A. L. Hutchins,* Chancellor; affirmed.

*J. F. Dyson,* for appellant.

1. Under the law and testimony in this case the court was not justified in finding that there was such a mistake in the conveyance as would justify the finding for appellee. To entitle a party to reform a deed on the grounds of mistake merely, it must be shown that the mistake was common to both parties and that the deed as executed expressed the contract as understood by neither. 71 Ark. 614; 74 *Id.* 336. The proof of mutual mistake must be clear, unequivocal and decisive. *Ib.* Under the law as above the proof was not sufficient to justify the cancellation of the deed. 19 Ark. 522; 46 *Id.* 336. If the means of information are alike accessible to both parties so that with ordinary prudence or vigilance the parties might respectively rely on their own judgment, they must be presumed to have done so; or if they have not so informed themselves, they must abide the consequences of their own inattention and carelessness. 11 Ark. 66; 83 *Id.* 414; 95 *Id.* 528; 101 *Id.* 603.

2. The claim that appellee was mentally incapable of transacting business at the time the deed was made was an afterthought and not sustained by the evidence. The evidence to overcome the written memorial must be clear, unequivocal and decisive. 96 Ark. 264; 14 *Id.* 167; 46 *Id.* 164; 71 *Id.* 614; 75 *Id.* 72; 100 *Id.* 569.

The proof is wholly insufficient, and it is nowhere shown that appellant could be placed *in statu quo* if cancellation was decreed, nor has appellee offered to do so. 15 Ark. 286; 25 *Id.* 196.

*Harry M. Woods,* for appellee.

1. The cases cited by appellant as to reformation of a deed for mutual mistake correctly state the law and also sustain the contention of appellee as to fraud on part of plaintiff and incapacity of appellee Maberry. In addition to cases cited for appellant, see 135 Ark. 293; 132 *Id.* 227; 105 *Id.* 44; 84 *Id.* 490.

2. The evidence upon the question of mutual mistake is conclusive, and the chancellor was fully warranted in setting aside *the whole transaction.*

3. Maberry was incapable from disease and lack of mentality at the time of conveyance of managing or handling his affairs. The testimony proves this, and the decree should not be reversed. 71 Ark. 643; 81 *Id.* 609; *Ib.* 622; 129 *Id.* 301; 84 *Id.* 490.

HUMPHREYS, J. Appellant instituted suit against appellees in the Southern District of the Circuit Court of Woodruff County to recover possession of about fourteen acres of land in the south part of lot 1, section 16, township 5 north, range 3 west, in said county.

The complaint alleged that the appellant was the owner of said real estate, by purchase from appellee, A. F. Maberry, evidenced by a warranty deed of date November 29, 1916, from said appellee and his wife; that appellee and his lessee, R. J. Carter, were in the unlawful possession of said property.

Appellee filed an answer, denying the material allegations of the complaint and a cross-bill alleging—

*First.* That the land sold, and intended to be conveyed, was cut-over timber land, but, by mutual mistake, the land conveyed on the 29th day of November, 1916, and described as lot 1 in said section, township and range, embraced seven or eight acres in "Kates Camp Farm," which latter acreage was in cultivation and had upon it two or more buildings.

*Second.* That on the 29th day of November, 1916, on account of an extended illness, appellee did not have the mental capacity to execute a deed.

*Third.* That the deed was induced by the false and fraudulent representation of appellant that lot 1 in said section, township and range contained only forty acres of cut-over timber land.

Based upon the aforesaid allegations, appellee offered to refund the purchase money, taxes, interest, etc., to appellant, and prayed for a cancellation of the deed, and requested that the cause be transferred to the chancery court.

At the same time, appellee, R. J. Carter, answered, denying all the material allegations of the complaint, and, by way of affirmative defense, set up that he held that portion of "Kates Camp Farm" which was embraced in lot 1 of said section, township and range, under a lease from A. F. Maberry, of date September 12, 1916; that, at the time the deed in question was executed by A. F. Maberry to J. R. Boon, he was in possession of and cultivating seven or eight acres in the south part of lot 1 in said section, township and range, and had constructed two houses and was constructing others thereon. Over the objection of appellant, the cause was transferred to the chancery court. In the chancery court, appellant filed a reply, denying the material allegations in the cross-complaint of appellee A. F. Maberry, and the allegations in the answer of appellee R. J. Carter, setting up new matter.

The cause was submitted to the chancery court upon the pleadings and evidence, which resulted in a finding for appellees. In accordance with the findings, the deed was canceled and a judgment rendered in favor of appellant for $600, with interest from the 29th day of November, 1916, and all taxes, with interest thereon, which had been expended by appellant. The cause was retained by the court for the purpose of ascertaining the value, if any, of such permanent improvements as had been made in the meantime by appellant.

From the findings and decree, an appeal has been prosecuted to this court, and the cause is before us for trial *de novo*.

Upon the issue joined as to whether or not the deed embraced a portion of the land known as ''Kates Camp Farm,'' appellee testified he was under the impression that lot 1 in said section, township and range, contained 40 acres of cut-over timber land; that he sold the land on the basis of 40 acres at $15 per acre, or a total of $600; that appellant understood he was buying that number of acres and that character of land from him; that neither understood that lot 1 embraced any open land in cultivation or upon which houses had been built.

Appellant testified that at the time he made the purchase and the deed was executed, he knew that lot 1 in said section, township and range, contained 54.83 acres and that he so informed appellee; but his testimony as a whole reflected that both he and appellee understood that said description embraced only cutover timber land and extended on the south to the land which was open, in cultivation and in possession of appellee, R. J. Carter, who had constructed two and was constructing other houses thereon. In the course of the examination of appellant, the following interrogatories were propounded and responses given:

''Q. You didn't know you were buying those houses, did you?

''A. No, sir.

''Q. You didn't intend to buy them, did you?

''A. No; I bought lot 1.

''Q. At the time you bought lot 1 did you expect or intend to buy any open land?

''A. No, sir.

''Q. And you didn't know you were buying any open land, did you?

''A. No, sir.

''Q. And as you said awhile ago, you thought you were buying timber and cut-over land and that is what he thought he was selling you?

''A. Yes, sir.

''Q. And that is the way he sold it, isn't it?

''A. Yes, sir.

"Q. You really feel like if you have any title whatever to that land it was a mistake, don't you?

"A. Well, yes.

"Q. And you think so now, don't you?

"A. Well, it wasn't his intention.

"Q. And it wasn't yours?

"A. No, sir.

"Q. Then don't you admit that any title you may have to the open land is the result of a mutual mistake on the part of you and Mr. Maberry?

"A. Well, yes."

The evidence on the part of appellant showed that the seven or eight acres in cultivation, included within the description in the deed, were worth from $25 to $30 per acre, and the evidence of appellee showed that the same lands were worth from $75 to $100 per acre. The undisputed evidence showed that the cut-over lands were worth about $15 per acre. These values indicate that appellant did not intend to buy, and appellee did not intend to sell, the seven or eight acre tract included within the description used to describe the lands sold and purchased.

We are convinced from a careful reading of the whole testimony responsive to the issue of mutual mistake that the description used to identify the land intended to be sold did not properly describe it. Both were under the impression that the description embraced certain cut-over timber land north of the land in possession of appellee R. J. Carter, and being cultivated by him. So the use of the description to designate the land sold was a mutual mistake on the part of appellant and appellee. To our minds the proof is clear, unequivocal and decisive to the effect that the description, "Lot 1, section 16, township 5 north, range 3 west," was used by the parties under the impression that the description covered the lands and only the lands intended to be sold and conveyed, but that, as a matter of fact, said description embraced lands which the appellee did not intend to sell and which the appellant did not intend to buy. The mistake was common to

both parties, and the deed did not express the contract as understood by either.

Under this view of the evidence, we deem it unnecessary to summarize the evidence responsive to the other issues in the case.

No error appearing in the record, the decree is affirmed.